The judgment of the court was pronounced by
Slidell, J.
The plaintiff seeks to make .the defendant MeFall liable as a partner, upon a note of Belknap Sf Co. to their own order, and by them endorsed, dated New Orleans, May 22d, 1847, and there payable. There was a judgment as in case of non-suit in the court below, and the plaintiff appealed.
The material facts are as follows : About the 1st December, 1845, a commercial house was established in the State of Arkansas uuder the style of Belknap Sf Co. It was composed of M. L. Belknap, C. W. Belknap, and MeFall, the defendant. It thus existed, with the consent of the parties, until *168 December-, 1846, at or shortly after which time McFall retired. But no notice of retirement was published until after the date of the note. During the existence of the partnership, they purchased their dry goods, hardware, and drugs, in Louisville, and their groceries in New Orleans. Their business seems to have been that of “ country merchants.” At the same time, there existed at Providence, in Louisiana, a firm styled Belknap and McFall, composed of M. L. Belknap and the defendant. Mygalt Edwards were a New Orleans house, of which the plaintiff Edwards, was a partner. The consideration of the note was goods sold at its date by Mygalt 8f Edwards to the house of Belknap Sf Co., personated by C. W. Belknap. This was the first transaction Belknap £f Co. had with Mygalt and Edwards. A clerk of Mygalt and Edwards, who made the sale, states that at the time the'goods were purchased, he asked Belknap “ if Belknap McFall, of Lake Providence, were interested in his house;” to which Belknap answered “ that they were all connected together, but that Belknap &f McFall lived at Lake Providence, and that he attended to the business of Belknap Co., somewhere in Arkansas.” The clerk further deposed, that he had the conversation above related at the request of Edwards, and took a memorandum of it, which has been mislaid.
The fair and reasonable inference from the whole evidence is, that Mygalt Sf Edwards when they made the sale to Belknap 8f Co., had heal'd of the connection of McFall with that house, who, as we have seen, during the previous year, had business transactions in New Orleans; and they must be considered as selling the goods, under the belief that the partnership still existed. And this brings us to the enquiry, whether McFall, who had retired from the firm, before the note was given, can be held liable to the plaintiff.
As McFall was once a partner of the house of Belknap Sf Co., it was his duty when he retired from it, to publish a notice to that effect. It is argued, that he is to be treated as a dormant partner, because his name did not figure expressly in the style of the house/|We are not prepared to say, that a person can he styled a dormant partner, who enters into a partnership with A., under the style of A. & Co. The words “ & Co.,” hold out to the world that some one .else is concerned besides A. .The term dormant seems more properly applicable to the case of a party associating himself in business with A., who transacts the business in his A.’s sole name. See Mitchell v. Dall, 2 Harr & Gill, 171. But, even if McFall could enjoy the advantage of being considei;ed a dormant partner, the law of the case is still against him. It is true, the Fase of a dormant partner is treated as an exception to the general rule, that the liability of partners quoad third persons, cannot be avoided without public notice. But this must be received with the qualification, that the person to be affected by the retirement of the dormant partner, was without knowledge of the fact of his being once in the partnership. If, at the time of contracting, he is aware of that fact, he must be considered as believing its continuance; and therefore trusting the partner who has secretly retired. The case of Farran v. Deflinne, 1 Carrington and Kirwan, was one of a dormant partner. The law, says Cresswell, L, stands thus : “If there had been a notorious partnership, but no notice had been given of the dissolution thereof, the defendant would have been liable. If there had been a general notice, that would have been sufficient for all but actual customers ; these, however, must have had some kind of actual notice. If the partnership had remained profoundly secret, the defendant could not have been affected by transactions which took place after he had retired ; but if the partnership had become known to any person or *169 persons, he would be in the same situation, as to all such persons, as if the existence of the partnership had been notorious.”
In Carter v. Whally and others, 1 Barnewall and Adolphus, 11, the defendant Saunders had been a partner in a company, doing business under the title of Pías Madoc Colliery Company near Ruabon, North Wales,” but had retired before the bill of exchange upon which he was sued was accepted by the secretary of the company. Lord Tenderden was of opinion, that the action was not sustained, Saunders having withdrawn from the firm before the acceptance was given ; and that the plaintiff, who discounted the bill at Birmingham, could not avail himself of the want of notice, as it did not appear that he had ever dealt with the company while Saunders was a member, or that the partnership, during that time, had been so known at Birmingham, where. the plaintiff carried on business, that he must be supposed to have looked upon Saunders as a partner, in default of notice to .the contrary. The plaintiff was, therefore, non-suited. The opinions of the judges upon the refusal of a new trial are pregnant with the inference that if Carter had known, when he took the bill, that Saunders was once a partner, the case would have been with the plaintiff. The opinions of Lord Tenderden and of Parke, J., also show that would not have been necessary to prove expressly Carter's knowledge, but that such knowledge might be presumed, if it were proved that Saunders' connection with the company had been generally known in Birmingham. See also Evans v. Drummond, 4 Esp. 88. Kelly v. Hurlburt, 5 Cowan, 535. Smith’s Mercantile Law, 47. Collier on Part. 3,62,313.
It is therefore decreed, that the judgment of the district court be reversed; and it is further decreed, that the plaintiff recover from the said defendant, James H. McFall, in solido, the sum of $874, With interest from 28th May, 1849, until paid, and costs in both courts.